# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Jack Kimm, | ) | |
| | ) | |
| Plaintiff, | ) | 2:14-cv-1966 JWS |
| | ) | |
| vs. | ) | ORDER AND OPINION |
| | ) | |
| Martin Brannan, *et al.*, | ) | [Re: Motion at doc. 112] |
| | ) | |
| Defendants. | ) | |

## I. MOTION PRESENTED

At docket 112, defendant Rayburn Evans (Evans) filed a motion for summary judgment. Plaintiff Jack Kimm (Kimm) responded at docket 136. Evans replied at docket 140. The parties requested oral argument, but the matter has been adequately briefed, and the court finds that argument would not be of additional assistance.

## II. BACKGROUND

Kimm is a California resident. In this lawsuit he sued five individuals who reside in Arizona and La Paz County, Arizona. Kimm operates a hay brokerage business. His business advances funds to hay farmers in exchange for an interest in the crop to be produced. Once harvested, the hay is sold and the proceeds divided between Kimm and the hay farmers. Kimm first contracted with defendant Rayburn Evans on

November 4, 1997, to finance Evans's hay crop to be grown in La Paz County. It is undisputed that both parties signed the 1997 contract. Kimm alleges that for each of the next four years, he and Evans contractually agreed to continue their arrangement. In 2002 Kimm alleges that Evans was selling hay grown with Kimm's financial assistance to others. Kimm alleges that when he and Evans ceased to do business, Evans owed Kimm $385,589.80. In 2004, Kimm sued Evans in La Paz County Superior Court, based in part on breach of contract, and attached five contracts that were allegedly signed by the parties.[1] The five contracts are similar, but the 1998-2001 contracts had different wording as to how Kimm's deposits for hay payments were to be applied, which is admittedly more favorable to Kimm.[2] Evans, a former La Paz County Sheriff, hired lawyer Steven Suskin, a former La Paz County Attorney, to defend him in Kimm's civil suit.

After Kimm filed the civil lawsuit, Evans contacted the La Paz County Sheriff's Office on April 17, 2003, and claimed that Kimm had engaged in fraud and forgery in relation to his lawsuit against Evans. In particular, Evans claimed that four of the hay brokerage contracts—for the years 1998, 1999, 2000, and 2001—were forged by Kimm. Detective Bagby, from the sheriff's office, contacted Kimm who told the detective that the contracts were signed by Evans and that Evans owed Kimm money. Bagby discussed the matter with La Paz County Attorney Buckalew. Buckalew declined to prosecute Kimm, asserting that it was part of a civil matter.

---

[1] Doc. 112-2 at pp. 7-32.

[2] Doc. 112-2 at pp. 22, 24, 26, 28, 30; Doc. 112-2 at p. 57 (Kimm deposition at p. 107).

Thereafter, both Evans and Kimm gave deposition testimony in Kimm's civil suit against Evans. Kimm testified that he personally observed Evans sign not only the 1997 contract, but also the 1998,[3] 1999,[4] 2000,[5] and 2001[6] contracts. Evans testified that he did not sign the four contracts after the 1997 one nor did he agree to the language that was different in those contracts.[7] Evans and Suskin obtained the services of a forensic document examiner who conducted an examination of the signatures on the four disputed contracts based on her comparison of the questioned signatures with other known signatures of the parties. In May of 2005, she found that "Evans did not execute his signatures on the questioned agreements" and that "[a] defect in the printing . . . was found on all four questioned agreements," which she explained is usually caused by a faulty or blocked nozzle of the printer.[8] Her ultimate conclusion was that "the questioned agreements . . . were not signed by Rayburn Evans and were not produced in the normal course-of-business over a period of four years. They were very probably manufactured on or about the same date."[9]

With this new information, Evans and his attorney, Suskin, again raised the matter with La Paz County officials on May 12, 2005. At this time, there was a new La

---

[3] Doc. 135-27 at p. 25 (Kimm deposition at pp. 92-93).

[4] Doc. 135-27 at p. 26 (Kimm deposition at p. 96).

[5] Doc. 135-27 at p. 28 (Kimm deposition at p. 104).

[6] Doc. 135-27 at p. 29 (Kimm deposition at p. 109).

[7] Doc. 135-26 at pp.18-19 (Evans deposition at pp. 65-71).

[8] Doc. 112-2 at p. 64.

[9] Doc. 112-2 at p. 65.

3

Paz County Attorney, Defendant Martin Brannan. Brannan had been working in the La Paz County Attorney's Office since the mid-90s and had been hired as a deputy county attorney by Suskin near the end of Suskin's tenure as the La Paz County Attorney.[10] Brannan had the Arizona Department of Public Safety crime lab conduct an independent assessment of the disputed signatures. The crime lab report concluded that [t]here is a good probability that the Rayburn Evans signatures on [the disputed contracts] were NOT executed by Rayburn Evans and are likely traced simulations of a genuine Rayburn Evans signature. There are indications that the Rayburn Evans signature on [the 1997 contract] was the model signature ultimately used to produce[] the traced signatures."[11] Brannan filed a criminal indictment against Kimm in January of 2007. Frank Haws was the county investigator at the time. He was friends with Evans and met with him on a weekly basis to play cards. Haws presented the evidence against Kimm to the grand jury, which subsequently indicted Kimm on multiple counts of forgery and perjury.

Kimm subsequently filed a complaint with the Colorado River Indian Tribe (CRIT) to press charges against Evans for false testimony and theft. CRIT referred it back to the La Paz County Attorney's Office, but the agency would not conduct an investigation and did not bring charges against Evans. Kimm's attorney also filed a motion to disqualify the La Paz County Attorney's Office because of Evans's professional connections to the office. Brannan conceded that disqualification was appropriate after

---

[10] Doc. 135-1 (Suskin deposition at pp. 37-38).

[11] Doc. 112-2 at p. 75.

4

he learned that Haws had a personal relationship with Evans,[12] and the case was consequently dismissed without prejudice in June of 2008. Thereafter, Brannan lost his re-election campaign for La Paz County Attorney. Brannan asserted that Evans did not support his campaign.[13]

In February of 2009, the new La Paz County Attorney, Defendant Samuel Verderman, and the La Paz County Chief Deputy Attorney, Defendant Thomas Jones, resumed criminal proceedings against Kimm regarding the contracts. Verderman briefly worked for an attorney in town who was the statutory agent for Evans's business. The only witness presented to the grand jury was again investigator Frank Haws, who presented the same expert evidence against Kimm. The grand jury issued an indictment. Kimm again moved for disqualification of the La Paz County Attorney's Office, and his request was granted. Prosecution of the case was transferred to CRIT. The case was eventually dismissed with prejudice on September 20, 2013, based in part on the prosecution's failure to present the case to the grand jury in a fair and impartial manner and on the appearance of impropriety.

Kimm then filed this federal lawsuit. The basis of his complaint is that the various county employees wrongfully prosecuted him. Counts One, Three, Four, Five, Six, Seven, Eight, Nine, Eleven, and Twelve were brought against Evans.[14] Count One is a § 1983 claim. It is entitled, "Free Speech and Free Press, Law Enforcement

---

[12]Doc. 135-18.

[13]Doc. 135-19.

[14]The Amended Complaint is at docket 48.

5

Retaliatory Conduct, and Abuse of Process."[15] Within its text, Kimm alleges he was "deprived of privileges and immunities guaranteed to all citizens when he was subjected to law enforcement retaliatory conduct, malicious and selective prosecution and was criminally charged without probable cause."[16] He then asserts that he "was deprived of equal protection and due process in an attempt to chill his free speech . . . and exact revenge for filing the civil lawsuit against Rayburn Evans."[17] He also asserts that he "was investigated, prosecuted, harassed and subjected to improper abuse of power, without probable cause, and with malice."[18]

Count Three is another § 1983 claim based on substantive due process under "the United States Constitution" for the defendants' "malicious prosecution without probable cause."[19] Count Four is a state due process claim for malicious prosecution without probable cause.

Count Five is labeled a § 1983 claim based on equal protection, but the text indicates generally that it is also based on the First, Fourth, Fifth, and Fourteenth Amendments.[20] Again, the allegation is simply that the defendants subjected him to unconstitutional malicious prosecution. Count Six is another § 1983 claim based on a conspiracy to violate his constitutional rights by bringing criminal charges against him.

---

[15] Doc. 48 at p. 14.

[16] Doc. 48 at p. 15, ¶ 92.

[17] Doc. 48 at p. 15, ¶ 93.

[18] Doc. 48 at p. 15, ¶ 94.

[19] Doc. 48 at pp. 16-17, ¶ 104.

[20] Doc. 48 at p. 18, ¶ 112.

6

Count Seven alleges that all defendants engaged in a pattern of unlawful activity constituting a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* Count Eight alleges the same thing, but under Arizona's racketeering law, A.R.S. § 13-2301 *et seq.*

Count Nine pleads a state claim for abuse of process. Count Eleven is a state claim for defamation and false light invasion of privacy. Count Twelve is for intentional infliction of emotional distress.

Evans now moves for summary judgment on all of the claims against him. He argues that the La Paz County Attorney's Office had probable cause to believe Kimm forged Evans's signature on the disputed contracts and then perjured himself under oath during his 2005 deposition, and therefore all the claims against him necessarily fail. In the alternative, he argues that Kimm's claims are all barred by the applicable statutes of limitations or that Kimm failed to present evidence to support his claims. He also argues that Counts One, Three, Four, Five, and Six must fail because Evans was not a state actor nor was he acting under the color of state law.

### III. STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[21] The materiality requirement ensures that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary

---

[21] Fed. R. Civ. P. 56(a).

judgment."[22] Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[23] However, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[24]

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[25] Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only point out the lack of any genuine dispute as to material fact.[26] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[27] All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[28] However, the non-moving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual

---

[22]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[23]*Id.*

[24]*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[25]*Id.* at 323.

[26]*Id.* at 323-25.

[27]*Anderson,* 477 U.S. at 248-49.

[28]*Id.* at 255.

8

dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[29]

## IV. DISCUSSION

### A. Malicious prosecution claims

Counts One, Two, Three, Five, and Six of Kimm's amended complaint are all § 1983 claims and are essentially the same malicious prosecution claim. They are based upon the defendants' actions in pursuing criminal charges against him without adequate probable cause. In Counts One, Two, Three, and Five, Kimm generally asserts that in pursuing these criminal charges, the defendants intended to violate a variety of Kimm's constitutional rights, such as free speech, equal protection, and substantive due process. In Count Six, Kimm alleges that the prosecution was undertaken at the "behest of Defendant Evans" and that the parties conspired to violate his constitutional rights. Count Four is the same claim of malicious prosecution brought under the Arizona Constitution.

To pursue a § 1983 claim for malicious prosecution, a plaintiff "must show that the defendants prosecuted her with malice and without probable cause, and that they did so for the purpose of denying her equal protection or another specific constitutional right."[30] Malicious prosecution itself is not a due process violation that can be addressed under § 1983 without something more; there must be a showing of an intent

---

[29] *Id.* at 248-49.

[30] *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995).

9

to deprive the plaintiff of equal protection or some other constitutional provision.[31]  Such a claim cannot be based on substantive due process alone.[32]  The defendant must be a state actor or, if not a state actor, there must be a showing that the defendant "conspired or acted jointly with state actors."[33]  Evans argues that Kimm's malicious prosecution claims must fail, not only because there is no evidence to suggest he conspired or acted jointly with state actors to maliciously prosecute him, but also because there was no malicious prosecution by the state actors in the first instance given the existence of probable cause to support the county's initiation of criminal proceedings.[34]

The court must look to state law when analyzing claims for malicious prosecution under § 1983.[35]  Therefore, the same analysis applies for the four federal § 1983 claims and the state law claim.  Under Arizona law, the failure to establish lack of probable cause is a complete defense to a claim for malicious prosecution.[36]  "Whether the facts in a case are sufficient to constitute probable cause is a question of law for the court

---

[31]*Id.*

[32]*Awabdy v. City of Adelanto*, 368 F.3d 1062, 1069 (9th Cir.2004).

[33]*Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 783 (9th Cir. 2001).

[34]He also raises a statute of limitations argument.  However, for the same reasons set forth in the court's order at docket 47, the statute of limitations has been met as to the malicious prosecution claims.

[35]*See, e.g., Usher v. City of Los Angeles,* 828 F.2d 556, 562 (9th Cir.1987) (using California's elements of malicious prosecution); *accord Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir.2004).

[36]*Bird v. Rothman*, 627 P.2d 1097, 1100 (Ariz. Ct. App. 1981).

. . . ."[37] In determining whether probable cause exists, the court applies a reasonable person test: "Upon the appearances presented to the defendant, would a reasonably prudent person have instituted or continued the proceeding?"[38] Kimm argues that here the jury should decide the state of facts and whether there was a lack of probable cause. Kimm misinterprets the case law. "All issues of a party's reasonable belief and prudence in bringing an action are to be decided by the court."[39] The jury is only involved if there are disputed accounts of what happened in relation to the investigation and when bringing the charges.[40] Here, there are no conflicting facts as to what the Defendants did in the course of their decision to bring charges.

It is undisputed that Kimm stated in his 2005 deposition that he saw Evans sign the contracts. Evans contended he never signed any contract after the 1997 one and contested the authenticity of the additional four contracts attached to Kimm's 2003 civil complaint. He obtained an expert analysis of the documents, which provided evidence to support his allegation. His expert concluded the four contracts were not signed by Evans and were likely "manufactured" on the same date. Evans again reported the alleged forgeries to La Paz County officials, they did an independent analysis of the signatures and concluded the same thing. Evans informed Kimm about the expert's conclusions and that he had forwarded the information to law enforcement. Given the evidence, the court concludes that there was sufficient probable cause to support the

---

[37] *Id.*

[38] *Id.*

[39] *Id.* at 1101.

[40] *Id.*

11

charges; that is, a reasonably prudent person could have instituted the criminal proceedings.

Indeed, the grand jury's indictment constitutes prima facie evidence of probable cause.[41] Kimm can overcome such a presumption by showing that the criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith,[42] but he has failed to do so here. His reliance on the fact that a prior prosecutor declined prosecution is of no consequence given that the prior prosecutor did not have the benefit of the expert analysis, and given that Kimm had not been deposed and therefore had not stated under oath that he in fact saw Evans sign the contracts. Kimm also alleges that the prosecutors "elicited false testimony regarding the opinion of a handwriting expert."[43] The basis for this allegation is that Brannan used the word "forgeries" during grand jury proceedings when describing the experts' conclusions even though the experts' reports did not actually use that word. He also argues that the experts did not conclude who in fact signed Evans's name. The court agrees with Evans that such an argument is nonsensical. Evans's expert concluded that the signatures were not authentic and were "manufactured." The state crime lab expert concluded that there was "a good probability" that the signatures were not authentic and were "likely traced" from the 1997 contract. Brannan and Haws did not misrepresent these conclusions to the grand

---

[41]*Awabdy*, 368 F.3d at 1067.

[42]*Id.*

[43]Doc. 48 at p. 7, ¶ 43.

12

jury by using the word "forgeries." These conclusions, combined with Kimm's deposition testimony, clearly supports an inference that the signatures were forged by Kimm.

Kimm also alleges that the indictment was flawed because the prosecutors and investigator withheld evidence of Kimm's prepayments to Evans for five growing seasons, which shows that the parties did indeed have an agreement in place during those years. Whether the parties had some on-going agreement or understanding after 1997 is not determinative of the criminal charges—whether Kimm forged signatures on contracts and lied during a deposition. That is, the criminal charges were not about the underlying civil dispute. It was about Kimm's actions in bringing about and trying to support that lawsuit. While such information could be relevant to the ultimate criminal determination, it is not exculpatory, and the court cannot conclude that failure to present such evidence was misconduct that casts into doubt the finding of probable cause here. Indeed, Kimm does not show that exculpatory evidence even exists, much less that the officials withheld any such evidence.

Lastly, Kimm argues that evidence regarding the defendants' close personal and professional relationships raises flags of misconduct. Evidence that La Paz County has a small legal community where many of the attorneys have worked in the public and private sector together and have had professional relationships with law enforcement does not support an inference of fraud or corruption that undermines the basis for the criminal charges against Kimm. The fact that the investigator was personal friends with Evans is more relevant and indeed was ultimately problematic for La Paz County in moving forward with the charges because of the conflict of interest, but that evidence

alone is not enough to warrant a finding of corruption, fraud, or wrongful conduct that puts the evidence supporting probable cause—mainly, the experts' reports—into doubt. Kimm argues that Haws, in an attempt to help his friend, did not conduct any independent investigation, but again, Kimm fails to point to any evidence that could have been discovered with a more thorough investigation. There are no witnesses or experts' reports in the record that favor Kimm's innocence.

**B.    Kimm's remaining claims**

Kimm's remaining claims against Evans include federal and state racketeering claims, a state abuse-of-process claim, an intentional infliction of emotion distress claim, and a defamation and false light privacy claim. Given that these claims are different from malicious prosecution, and therefore require proof of different elements, the existence of probable cause is not determinative. Indeed, Evans did not specifically explain how the presence of probable cause affects these remaining claims; rather, he simply alleges that Kimm has no evidence to support the rest of his claims. He also argues that they are barred by the applicable statute of limitations. The court will address each of the remaining claims in turn.

**1.    Racketeering**

A RICO claim involves showing (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) that proximately causes harm.[44] Racketeering activity includes an "act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled

---

[44] *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014).

14

substance or listed chemical, which is chargeable under State law and punishable by imprisonment for more than one year" or any act chargeable under one of the several enumerated federal statutes.[45] A pattern of racketeering activity requires the plaintiff to show that the defendant participated in at least two acts that were chargeable under the enumerated state or federal laws that are related and amount to or pose a threat of continued criminal activity.[46] Arizona's racketeering law similarly requires the showing of a predicate unlawful act, as well as a pattern of such activity.[47] Here, it is not clear what predicate racketeering activity Kimm relies upon to support his claims, but, as noted above, there is no evidence in the record suggesting any unlawful conduct on the defendants' part, much less a pattern of such activity.

### 2. Abuse of Process

While similar to malicious prosecution, abuse of process is not focused on the initiation of litigation, but rather on a party's misuse of the litigation process for an end other than that which it was designed to accomplish. As a result, the presence of probable cause does not in and of itself foreclose an abuse of process claim. Instead, a plaintiff must show "(1) a willful act in the use of judicial process; (2) for an ulterior purpose not proper in the regular conduct of the proceedings."[48] "Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done

---

[45] 18 U.S.C. § 1961(1).

[46] 18 U.S.C. § 1961(5); *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989).

[47] *Hannosh v. Segal*, 328 P.3d 1049, 1052-53 (Ariz. Ct. App. 2014).

[48] *Nienstedt v. Wetzel*, 651 P.2d 876, 881 (Ariz. Ct. App. 1982).

15

nothing more than carry out the process to its authorized conclusion, even though with bad intentions."[49] Here, Kimm has not shown any wilful act in the use of the judicial process taken by the defendants, other than the bringing of criminal charges. That is, there are no facts to show or even merely suggest that the criminal charges were used to coerce Kimm or extort something from him. The inferences Kimm believes can be made from the fact that there was an ongoing civil suit between the parties when the county attorneys initiated criminal proceedings only support a finding of ulterior motive, not a wilful act. Bad intentions alone are not enough to support an abuse of process claim. There must be some additional wilful act in fulfillment of that purpose apart from pursuing the process to its conclusion, and Kimm does not allege, much less show, that any such act occurred here.

### 3. Intentional infliction of emotional distress

Kimm's intentional-infliction-of-emotional-distress claim also fails for lack of supporting evidence. The elements of this cause of action are (1) conduct by the defendant that is extreme and outrageous; (2) an intent by the defendant to cause emotional distress or a reckless disregard of the near certainty that such distress will result from the conduct; and (3) severe emotional distress occurring as a result of the conduct.[50] "The trial court must determine whether the acts complained of are sufficiently extreme and outrageous to state a claim for relief."[51] To be sufficiently

---

[49]*Joseph v. Markovitz*, 551 P.2d 571, 574-75 (Ariz. Ct. App. 1976).

[50]*Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 905 P.2d 559, 562-63 (Ariz. Ct. App. 1995).

[51]*Id.*

16

outrageous in character and extreme in degree, the defendants' conduct must "'go beyond all possible bounds of decency'" and "'be regarded as atrocious and utterly intolerable in a civilized community.'"[52] "Only when reasonable minds could differ in determining whether conduct is sufficiently extreme or outrageous does the issue go to the jury."[53] Here, the court has already concluded that the prosecutors had probable cause to move forward with charges against Kimm and that the undisputed facts here do not support any finding of wrongdoing in relation to their process in establishing probable cause and bringing the charges.

Alternatively, such a claim is barred under the applicable two-year statute of limitations.[54] The limitations period began to run when Kimm knew or should have known of the injury which is the basis of the action. Here, Kimm certainly knew of the alleged injury at the time La Paz County renewed its prosecution against him in 2009. At that time, "the facts at the heart of his claim" were established.[55] The resulting alleged emotional distress must have accrued at or shortly after the second indictment.[56] That is, in 2009 Kimm could have alleged the defendants had intentionally inflicted emotional distress upon him by moving forward with a renewed prosecution he

---

[52]*Id.* (quoting *Cluff v. Farmers Ins. Exch.*, 460 P.2d 666, 668 (Ariz. Ct. App. 1969).

[53]*Id.*

[54]A.R.S. § 12-542; *Hansen v. Stoll*, 636 P.2d 1236, 1242 (Ariz. Ct. App. 1981).

[55]*See Watkins v. Arpaio*, 367 P.3d 72, 76-77 (Ariz. Ct. App. 2016).

[56]*Id.*

17

believed to be malicious and ill-motivated. He filed this lawsuit in 2013, far past the two-year deadline.[57]

### 4. Defamation and false light invasion of privacy

Kimm's claim for defamation and false light invasion of privacy in Count 11 runs into a statute of limitations problem as well. Such a claim is subject to a one-year statute of limitations.[58] The limitations period begins to run at the time the defamatory statement is published or made.[59] Here, the facts show that statements by Evans to La Paz County officials were made before 2012; that is, there is no evidence of any allegedly false statement made by Evans within the year preceding the 2013 complaint.

---

[57]The concept of a "continuing wrong" theory, under which the statute of limitations period does not begin to run until the termination of the wrongdoing rather than the inception of it, is not applicable here. *Id.* at 75-76.

[58]A.R.S. § 12-541.

[59]Defamation and false light invasion of privacy are actually two separate claims; however, the same statue of limitations analysis applies to both claims. *Clark v. Airesearch Mfg. Co. of Ariz., Inc. a Div. of Garrett Corp.*, 673 P.2d 984, 985 (Ariz. Ct. App.1983) ("It has been generally held that in defamation cases the cause of action accrues and the statute of limitations begins to run on the date of publication of the defamatory material."); *Watkins v. Arpaio*, 367 P.3d 72, 76-77 (Ariz. Ct. App. 2016) (applying a one-year statute of limitations to a claim for false light invasion and concluded there was no actionable statement by the defendant concerning the plaintiff within a year of filing the lawsuit).

## V.  CONCLUSION

For the reasons set out above, Evans's Motion for Summary Judgment at docket 112 is GRANTED.  Judgment in favor of Evans is granted on all counts against him.

DATED this 16th day of August 2017.


/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT