# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Jack Kimm, | ) | |
| | ) | |
| Plaintiff, | ) | 2:14-cv-1966 JWS |
| | ) | |
| vs. | ) | ORDER AND OPINION |
| | ) | |
| Martin Brannan, *et al.*, | ) | [Re: Motion at doc. 144] |
| | ) | |
| Defendants. | ) | |

## I. MOTION PRESENTED

At docket 144, Defendants Martin Brannan, Samuel Verderman, Frank Haws, Thomas Jones, and La Paz County ("County Defendants") filed a motion for summary judgment. Plaintiff Jack Kimm (Kimm) responded at docket 154. County Defendants replied at docket 157. The parties requested oral argument, but the matter has been adequately briefed, and the court finds that argument would not be of additional assistance.

## II. BACKGROUND

Kimm operates a hay brokerage business. His business advances funds to hay farmers in exchange for an interest in the crop to be produced. Once harvested, the

hay is sold and the proceeds divided between Kimm and the hay farmers. Kimm first contracted with defendant Rayburn Evans on November 4, 1997, to finance Evans's hay crop to be grown in La Paz County. It is undisputed that both parties signed the 1997 contract. Kimm alleges that for each of the next four years, he and Evans contractually agreed to continue their arrangement. In 2002 Kimm alleges that Evans was selling hay grown with Kimm's financial assistance to others. Kimm alleges that when he and Evans ceased to do business, Evans owed Kimm $385,589.80. In 2004, Kimm sued Evans in La Paz County Superior Court based in part on breach of contract and attached five contracts that were allegedly signed by the parties.[1] The five contracts are similar, but the 1998-2001 contracts had different wording as to how Kimm's deposits for hay payments were to be applied, which is admittedly more favorable to Kimm.[2] Evans, a former La Paz County Sheriff, hired lawyer Steven Suskin, a former La Paz County Attorney, to defend him in Kimm's civil suit.

After Kimm filed the civil lawsuit, Evans contacted the La Paz County Sheriff's Office on April 17, 2003, and claimed that Kimm had engaged in fraud and forgery in relation to his lawsuit against Evans. In particular, Evans claimed that four of the hay brokerage contracts—for the years 1998, 1999, 2000, and 2001—were forged by Kimm. Detective Bagby from the sheriff's office contacted Kimm who told the detective that the contracts were signed by Evans and that Evans owed Kimm money. Bagby

---

[1]Doc. 112-2 at pp. 7-32. Doc. 112-2 was filed in support of co-defendant Rayburn Evans's motion for summary judgment. The County Defendants incorporate the evidence in their motion. Doc. 144 at p.1.

[2]Doc. 112-2 at pp. 22, 24, 26, 28, 30; Doc. 112-2 at p. 57 (Kimm deposition at p. 107).

2

discussed the matter with La Paz County Attorney Buckalew. Buckalew declined to prosecute Kimm, asserting that it was part of a civil matter.

Thereafter, both Evans and Kimm gave deposition testimony in Kimm's civil suit against Evans. Kimm testified that he personally observed Evans sign not only the 1997 contract, but also the 1998,[3] 1999,[4] 2000,[5] and 2001[6] contracts. Evans testified that he did not sign the four contracts after the 1997 one nor did he agree to the language that was different in those contracts.[7] Evans and Suskin obtained the services of a forensic document examiner who conducted an examination of the signatures on the four disputed contracts based on her comparison of the questioned signatures with other known signatures of the parties. In May of 2005, she found that "Evans did not execute his signatures on the questioned agreements" and that "[a] defect in the printing . . . was found on all four questioned agreements" which she explained is usually caused by a faulty or blocked nozzle of the printer.[8] Her ultimate conclusion was that "the questioned agreements . . . were not signed by Rayburn

---

[3]Doc. 135-27 at p. 25 (Kimm deposition at pp. 92-93). Kimm incorporates his evidence provided in support of his opposition to Evans's motion for summary judgment. Doc. 154 at n.1.

[4]Doc. 135-27 at p. 26 (Kimm deposition at p. 96).

[5]Doc. 135-27 at p. 28 (Kimm deposition at p. 104).

[6]Doc. 135-27 at p. 29 (Kimm deposition at p. 109).

[7]Doc. 135-26 at pp.18-19 (Evans deposition at pp. 65-71).

[8]Doc. 112-2 at p. 64.

Evans and were not produced in the normal course-of-business over a period of four years. They were very probably manufactured on or about the same date."[9]

With this new information, Evans and his attorney Suskin again raised the matter with La Paz County officials on May 12, 2005. At this time, there was a new La Paz County Attorney, Defendant Martin Brannan. Brannan had been working in the La Paz County Attorney's Office since the mid-90s and had been hired as a deputy county attorney by Suskin near the end of Suskin's tenure as the La Paz County Attorney.[10] Brannan had the Arizona Department of Public Safety crime lab conduct an independent assessment of the disputed signatures. The crime lab report concluded that [t]here is a good probability that the Rayburn Evans signatures on [the disputed contracts] were NOT executed by Rayburn Evans and are likely traced simulations of a genuine Rayburn Evans signature. There are indications that the Rayburn Evans signature on [the 1997 contract] was the model signature ultimately used to produce[] the traced signatures."[11] Brannan filed a criminal indictment against Kimm in January of 2007. Defendant Frank Haws was the county investigator at the time. He was friends with Evans and met with him on a weekly basis to play cards. Haws presented the evidence against Kimm to the grand jury, which subsequently indicted Kimm on multiple counts of forgery and perjury.

---

[9] Doc. 112-2 at p. 65.

[10] Doc. 135-1 (Suskin deposition at pp. 37-38).

[11] Doc. 112-2 at p. 75.

4

Kimm subsequently filed a complaint with the Colorado River Indian Tribe (CRIT) to press charges against Evans for false testimony and theft. CRIT referred it back to the La Paz County Attorney's Office, but the agency would not conduct an investigation and did not bring charges against Evans. Kimm's attorney also filed a motion to disqualify the La Paz County Attorney's Office because of Evans's professional connections to the office. Brannan conceded that disqualification was appropriate after he learned that Haws had a personal relationship with Evans,[12] and the case was consequently dismissed without prejudice in June of 2008. Thereafter, Brannan lost his reelection campaign for La Paz County Attorney. Brannan asserted that Evans did not support his campaign.[13]

In February of 2009, the new La Paz County Attorney, Defendant Samuel Verderman, and the La Paz County Chief Deputy Attorney, Defendant Thomas Jones, resumed criminal proceedings against Kimm regarding the contracts. Verderman briefly worked for an attorney in town who was the statutory agent for Evans's business. The only witness presented to the grand jury was again Haws, who presented the same expert evidence against Kimm. The grand jury issued an indictment. Kimm again moved for disqualification of the La Paz County Attorney's Office, and his request was granted. Prosecution of the case was transferred to CRIT. The case was eventually dismissed with prejudice on September 20, 2013, based in part on the prosecution's

---

[12]Doc. 135-18.

[13]Doc. 135-19.

5

failure to present the case to the grand jury in a fair and impartial manner and on the appearance of impropriety.

Kimm then filed this federal lawsuit. The basis of his complaint is that the various La Paz County employees, as well as Evans, wrongfully prosecuted him. He brought various claims under § 1983. He brought racketeering claims under both federal and state law. He brought a variety of state law claims, such as false arrest, defamation/false-light invasion of privacy, and intentional infliction of emotion distress. Early in the litigation, the County Defendants moved to dismiss some of the claims against them based on immunity. The court granted much of their request with respect to the three prosecutors—Defendants Martin Brannan, Samuel Verderman, and Thomas Jones—based on absolute immunity, leaving only the defamation claim against them. It also dismissed some of the claims against Haws, the La Paz County investigator, but left the claims for false arrest, intentional infliction of emotional distress, defamation, and negligence against him primarily because the County did not discuss specifically how immunity applies to Haw with regard to these state law claims. It also dismissed all of the federal claims against La Paz County itself. Kimm's amended complaint did not address the deficiencies, but rather simply included a few additional phrases and separated out some state claims that were originally combined with the corresponding federal claim.[14] The court indicated as such in its order at docket 47. Kimm did not seek to file an additional amended complaint. Evans subsequently moved for summary judgment on the claims brought against him. The

---

[14]The Amended Complaint is at docket 48.

court granted his motion.[15] The County Defendants now move for summary judgment on all remaining claims.

### III. STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[16] The materiality requirement ensures that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[17] Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[18] However, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[19]

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[20] Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only point out the lack of any genuine dispute

---

[15]Doc. 153.

[16]Fed. R. Civ. P. 56(a).

[17]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[18]*Id.*

[19]*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[20]*Id.* at 323.

7

as to material fact.[21]  Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[22]  All evidence presented by the non-movant must be believed for purposes of summary judgment and all justifiable inferences must be drawn in favor of the non-movant.[23]  However, the non-moving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[24]

## IV.  DISCUSSION

**A.  Defamation and false-light invasion of privacy**

At docket 47, the court denied the County Defendants' request to dismiss Kimm's defamation allegations against them based on absolute immunity.  It did so because Kimm's complaint alleged that they had "made or released statements to the pubic" about him that were "knowingly false, defamatory, and disparaging," and a prosecutor who makes allegedly false statements to the media is not entitled to absolute immunity.[25]  Defendants now move for summary judgment, arguing that Kimm produced no evidence of statements made by any of the County Defendants to the public.  All of their statements regarding Kimm that serve as the basis for his

---

[21]*Id.* at 323-25.

[22]*Anderson,* 477 U.S. at 248-49.

[23]*Id.* at 255.

[24]*Id.* at 248-49.

[25]Doc. 48 at ¶ 142 (Doc. 1 at ¶ 122).  See doc. 47 at p. 12.

defamation and false-light claim were made in the context of criminal proceedings, and those statements cannot serve as the basis for a civil lawsuit. Judges, parties, lawyers, witnesses, and jurors are all immune from suit based on statements made in court.[26] Therefore, the three La Paz County prosecutors named in this litigation and Defendant Haws are entitled to judgment as to Kimm's defamation claim.

In defending his defamation and false-light claim, Kimm attempts to reargue the issue of prosecutorial immunity. That is, he is essentially asking the court to reconsider its prior ruling at docket 47. The court declines to do so.

Kimm's claim for defamation and false-light invasion of privacy runs into a statute of limitations problem as well. Kimm relies on the court's prior analysis regarding the triggering of the statute of limitations for a malicious prosecution claim to object to the County Defendants' use of the statute of limitations defense to this claim. He argues that this case is essentially just about malicious prosecution. However, he did in fact bring other claims against the County Defendants. The torts of defamation and false-light invasion of privacy are distinct from a malicious prosecution claim and have different applicable statute of limitations. A defamation or false-light invasion of privacy claim is subject to a one-year statute of limitations.[27] The limitations period on such claims begins to run at the time the defamatory statement is published or made.[28]

---

[26]*Green Acres Trust v. London*, 688 P.2d 617, 620-22 (Ariz. 1984) (en banc).

[27]A.R.S. § 12-541.

[28]Defamation and false-light invasion of privacy are actually two separate claims; however, the same statue of limitations analysis applies to both claims. *Clark v. Airesearch Mfg. Co. of Ariz., Inc. a Div. of Garrett Corp.*, 673 P.2d 984, 985 (Ariz. Ct. App.1983) ("It has been generally held that in defamation cases the cause of action accrues and the statute of limitations begins to run on the date of publication of the defamatory material."); *Watkins v.*

9

Kimm cites no precedent where defamation has been treated as a continuing tort. Rather, each defamatory statement constitutes a separate and distinct cause of action.[29] Here, the facts show that all statements about Kimm made by the County Defendants occurred no later than February 24, 2011; that is, there is no evidence of any allegedly false statement made by the County Defendants within the year preceding the 2014 complaint.[30]

**B. False Arrest**

Kimm's initial complaint raised a claim for false arrest, and the heading associated with the claim indicated that it was against all defendants, despite the fact that the corresponding allegations only stated that the "sheriff's office deputies and detectives" restrained Kimm.[31] The court dismissed the claim as to the La Paz County prosecutors for immunity reasons based on the fact that the complaint did not allege that they had any role in his arrest outside of the decision to file criminal charges. Kimm's amended complaint did not fix the deficiencies. Rather, he only clarified that he was indeed bringing the false arrest claim against the prosecutors. The court has already dismissed the claim as it applies to the three prosecutors, and the amended

---

*Arpaio*, 367 P.3d 72, 76-77 (Ariz. Ct. App. 2016) (applying a one-year statute of limitations to a claim for false-light invasion and concluded there was no actionable statement by the defendant concerning the plaintiff within a year of filing the lawsuit).

[29]*See, e.g., Lewis v. Gupta*, 54 F. Supp. 2d 611, 616 (E.D. Va. 1999).

[30]Doc. 145-2 at pp. 2-3 (response to request 1); Doc.145-2 at pp. 3-4 (response to request 2); Doc. 145 at ¶ 36. Any other hearing that occurred after this date did not involve any of the named Defendants.

[31]Doc. 1 at ¶ 120.

10

complaint did not change the viability of such claim.[32] The amended complaint also removed Haws from the heading, which indicated that he was not bringing the claim against Haws. Therefore, there are no longer any defendants against whom the count remains.

Kimm admits that he is not bringing a false arrest claim against Haws. Instead he asserts that his false arrest claim is "intertwined with his broader malicious prosecution claims."[33] He goes on to assert that no physical restraint is needed to show false arrest and cites cases involving due process violations and the fabrication of evidence. His argument is not relevant here. To the extent Kimm asks the court to revisit its prior rulings, the time to do so has passed.

**C. Intention infliction of emotional distress**

To succeed on a claim for intentional infliction of emotional distress, the plaintiff must show (1) conduct by the defendant that is extreme and outrageous; (2) an intent by the defendant to cause emotional distress or a reckless disregard of the near certainty that such distress will result from the conduct; and (3) severe emotional distress occurring as a result of the conduct.[34] "The trial court must determine whether the acts complained of are sufficiently extreme and outrageous to state a claim for relief."[35] To be sufficiently outrageous in character and extreme in degree, the defendants' conduct must "'go beyond all possible bounds of decency'" and "'be

---

[32]Doc. 47 at pp. 18-20.

[33]Doc. 154 at p. 10.

[34]*Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 905 P.2d 559, 562-63 (Ariz. Ct. App. 1995).

[35]*Id.*

11

regarded as atrocious and utterly intolerable in a civilized community.'"[36] "Only when reasonable minds could differ in determining whether conduct is sufficiently extreme or outrageous does the issue go to the jury."[37]

At docket 153, the court concluded that there had not been a sufficient showing of intentional infliction of emotional distress. It found that there was no evidence of shocking wrongdoing in the pursuit of criminal charges against Kimm. Similarly here, there is no evidence of extreme and outrageous conduct on the part of Haws. Testifying during a grand jury proceeding despite a known conflict of interest is not sufficiently extreme or shocking. Moreover, Haws's participation in Kimm's prosecution cannot form the basis for an intentional infliction of emotional distress claim.[38] There is no other evidence presented to show some other shocking conduct by Haws.

Kimm's claim is also barred under the applicable two-year statute of limitations.[39] The limitations period began to run when Kimm knew or should have known of the injury which is the basis of the action. Here, the last action to possibly support a claim for intentional infliction of emotional distress against Haws was his testimony at the February 24, 2011 hearing. At that time, "the facts at the heart of his claim" were

---

[36]*Id.* (quoting *Cluff v. Farmers Ins. Exch.*, 460 P.2d 666, 668 (Ariz. Ct. App. 1969)).

[37]*Id.*

[38]*Linder v. Brown & Herrick*, 943 P.2d 758, 766 (Ariz. Ct. App. 1997) (applying absolute immunity principles for attorneys and witnesses to support its holding that there is no claim for fraud or intentional infliction of emotional distress against an opposing attorney participating in a judicial proceeding); *see also Edwards v. Smith*, No. 1 CA-CV-16-0235, 2017 WL 1230386 (Ariz. Ct. App. Apr. 4, 2017).

[39]A.R.S. § 12-542; *Hansen v. Stoll*, 636 P.2d 1236, 1242 (Ariz. Ct. App. 1981).

established.[40] The resulting alleged emotional distress inflicted by Haws must have accrued at or shortly after that time.[41] He filed this lawsuit on September 8, 2014, past the two-year deadline.[42]

**D. Negligence**

Kimm's negligence claim against Haws is also barred under the applicable two-year statute of limitations for the same reasons as noted above.[43] Haws's conduct in relation to this case occurred more than two years before Kimm filed his complaint. Furthermore, to the extent the claim is based on Haw's lack of investigation, there is no claim for simple negligence against an officer based on an alleged failure to properly conduct an investigation.[44]

**E. La Paz County**

The court previously dismissed Kimm's federal claims against La Paz County. Kimm concedes his complaint did not seek to impose vicarious liability on La Paz County for the County Defendants' alleged violations of state law,[45] and indeed no such

---

[40] *See Watkins v. Arpaio*, 367 P.3d 72, 76-77 (Ariz. Ct. App. 2016).

[41] *Id.*

[42] The concept of a "continuing wrong" theory, under which the statute of limitations period does not begin to run until the termination of the wrongdoing rather than the inception of it, is not applicable here. *Id.* at 75-76.

[43] A.R.S. § 12-542.

[44] *Landeros v. City of Tucson*, 831 P.2d 850, 851 (Ariz. Ct. App. 1992) (noting that a city may be liable if its police officers are grossly negligent in investigating a crime, but holding that the "public interest" mandates rejection of a claim for simple negligence based on an investigation) (citing *Cullison v. City of Peoria*, 584, P.2d 1156)).

[45] Doc. 154 at p. 10.

13

liability could be imposed, given that none of the state claims against the individually named County Defendants survive.

## V.  CONCLUSION

For the reasons set out above, the County Defendants' Motion for Summary Judgment at docket 144 is GRANTED.  Judgment in favor of Martin Brannan, Samuel Verderman, Thomas Jones, Frank Haws, and La Paz County is granted on all remaining counts.

DATED this 25th day of October 2017.


/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT